[Philadelphia, January, 15, 1829.]

ELLIOTT and others, Executors of FIELD, *against* WALKER and another, Administrators of WILSON.

CHEEVER and FALES *against* the same.

IN ERROR.

The plaintiff being the defendants' supercargo, sold their goods on credit at a foreign port, and procured from a house at that port advances, on an assignment of the debts due from the purchasers of the cargo.    These advances he remitted to his shippers in a return cargo.    In his account sales of the outward cargo rendered to one of the shippers, he did not mention the names of the purchasers, but concluded it with " errors, omissions, *and outstanding debts excepted.*"    In that rendered to the other shipper he mentioned the names of the purchasers, and concluded the account with " errors and omissions excepted."    The purchasers having become insolvent, the foreign house which had made the advances, attached the plaintiff's property and recovered the amount of their advances, and the plaintiff brought suit against the consignors for reimbursement.    *Held,* that he was entitled to recover.

WRIT of error to the District Court for the city and county of *Philadelphia.*    The defendants in error were the plaintiffs below.

(Elliott and others, Executors of Field, *v.* Walker and another, Administrators of Wilson.)

In these two causes, which depended upon the same facts and principles, a case was stated for the opinion of the court below, the substance of which was as follows:

On the 14th of *March,* 1820, the defendants consigned certain merchandize to *John Wilson,* the plaintiffs' intestate, as supercargo of the schooner *Baltimore,* to be sold at *Port-au-Prince,* for account and risk of the consignors, with general discretionary powers on the subject. *Wilson* sold the goods at *Port-au-Prince,* on credit, and by a letter dated the 20th of *April,* informed the shippers that he had sold part of the consignment on a short credit, but did not state the names of the purchasers nor the term of credit. In his letters of the 26th of *April* and the 5th of *May,* he advises *Field* that he had not sold his nankins, but informs *Cheever* and *Fales* that he had been fortunate with theirs, as the remainder of them had been disposed of at a short credit. In his letter of the 13th of *June,* he states, that he will ship the nett proceeds of sales in coffee, but that not having received the Government expenses, he cannot exactly state the sum, which by the next opportunity to *America,* he will do, enclosing a bill of lading at the same time. On the 17th of *June,* 1820, *Wilson* borrowed of Messrs. *David Corry and Co.,* of *Port-au-Prince,* the merchants with whom he transacted his business, an advance of the nett proceeds of the whole cargo, amounting to about the sum of seventeen thousand five hundred dollars, leaving that house to reimburse themselves by collecting the outstanding debts due upon the sales, from the different purchasers. This advance was made in green coffee, which was shipped from *Port-au-Prince,* to the several shippers by the schooner *Baltimore,* in the proportion of the proceeds of their several invoices. In the account of the sales of *Field's* shipment, the names of the purchasers were not mentioned, but it concluded with "errors, omissions, and outstanding debts excepted." In that rendered to *Cheever* and *Fales* the names of the purchasers were given, and the account concluded with "errors and omissions excepted." In consequence of a destructive fire which laid waste a great part of the city of *Port-au-Prince,* a few weeks after these sales were made, several of the purchasers of the defendant's goods became wholly insolvent, and the balances due from them were lost. The house of *Corry and Co.* demanded payment of their advances from *Wilson,* by whom they were referred to the consignors, who neglected to make payment.

*John Wilson* died at *Philadelphia,* in the summer of 1821, and administration on his estate was granted to the plaintiffs. On the 4th of *October,* 1821, Messrs. *Corry and Co.,* attached the property of *Wilson* at *Port-au-Prince,* for the balances claimed by them, and recovered. On the 3d of *January,* 1822, by order of the court at *Port-au-Prince,* the garnishees paid over to Messrs. *Corry and Co.* the amount of their claims, with costs; and the

(Elliott and others, Executors of Field, *v.* Walker and another, Administrators of Wilson.)

present suits were brought to recover from the defendants the amount so paid, or the portion thereof due from each of the consignors with interest, and a proportion of the expenses of the suit at *Port-au-Prince.*

On this case, which was agreed to be considered as a special verdict, the District Court rendered judgment for the plaintiffs, and the defendants took a writ of error.

*Lowber,* for the plaintiffs in error, contended, 1. That if an agent sell on credit, even within his authority, it is his duty, within a reasonable time, to inform his principal of the names of the purchasers, and the terms of sale.

2. That if the agent treat the security as his own, he makes himself the debtor to his principal; and if he has not paid, he is liable to pay; if he has paid, he cannot recover back what he has paid. In support of these positions, he cited *Paley on Agency,* 27. 1 *Campb.* 411. 2 *Campb.* 546, (*note.*) *Id.* 291. 1 *Eng. Common Law Rep.* 250. 1 *Wash. C. C. Rep.* 394, 445. *Oakley* v. *Renshaw,* 4 *Cowen,* 250.

*Dunlap,* for the defendants in error, insisted, 1. That the principal was bound to repay his agent any losses which may have happened, not through his fault.

2. That the agent, though clothed with comprehensive powers, is not liable for losses, unless by his own fault. He cited *Livermore on Factors,* 11, 18, 73, 75, 463. *Ramsay* v. *Gardner,* 11 *Johns.* 439. *D'Arcey* v. *Lysle,* 5 *Binn.* 441. 3 *Caines' Rep.* 238. 1 *Marsh. on Ins.* 292. *Andrews* v. *Robinson,* 3 *Campb.* 199. *Wilkinson* v. *Winn,* 4 *Campb.* 177.

The opinion of the court was delivered by

Rogers, J.—The payment of the balance of an account by a factor or commission merchant, to his principal, after the sales made, and for the purpose of *closing* the accounts between the parties, is an assumption of outstanding debts. And this is the principle of the case of *Oakley* v. *Renshaw,* 4 *Cow.* 205.

After the *final settlement,* the principal has the best grounds to suppose that the agent has been actually paid, or that he is content to take upon himself the responsibility of the purchaser. Where there is nothing in the transaction to rebut the inference, this is undoubtedly a fair presumption. To subject the principal, at any distance of time, when he has reason to suppose the business finally closed, would be a deception upon him, attended with danger and great inconvenience, and particularly in the case of a foreign creditor, who has no means of knowing the debtors, or guarding against imposition. In the absence of fraud or mistake, it would be unsafe to unravel such a transaction; for after final settlement, the principal, gives himself no further concern, as he has a right to suppose

(Elliott and others, Executors of Field, *v.* Walker and another, Administrators of Wilson.)

that the money has been received, or that the factor agrees to take upon himself the risk of the solvency of the purchaser. The difficulty in this case, arises not from any uncertainty in law, but in determining the nature of the settlement, or in other words, whether this was a final settlement, and so understood by the parties. In the letter of the 20th of *April, Wilson* informs the shippers, that he had sold *part* of the consignment on a short credit, but neither states the names of the purchasers nor mentions the term of credit; and we are left to conjecture whether short credit means sixty or ninety days, six months or a year. In the letters of the 26th of *April* and 5th of *May*, he advises *Field*, that he had not sold his nankeens, but informs *Cheever* and *Fales*, that he had been more fortunate with theirs, as the remainder of them had been disposed of at a short credit; but in the letter of the 13th of *June*, he says, he will ship the nett proceeds of sales in coffee, but that not having received the Government expenses, he cannot exactly state the sum, which by the next opportunity to *America*, will be done, enclosing the bill of lading at the same time. On the 19th of *June*, the accounts of sales and bills of lading of the coffee were duly rendered to the shippers, in which I remark this difference. In the account of sales of *Field's* shipment, the names of the purchasers are not given, but it is expressly stated, in the usual mercantile manner, errors, omissions, and *outstanding debts* excepted. In the account of sales rendered to *Cheever* and *Fales*, the *names* of the *purchasers* are given, and it is stated, errors and omissions excepted. In the absence of all proof to the contrary, the inference is, that at the time the balance was paid, it was done with those accounts before them, and with express reference to them. There is then, no room for presumption, that the shippers supposed the debts had been paid; for it appeared in the accounts rendered that they had not. Nor can it be reasonably supposed, that *Wilson* intended to take upon himself the risk of their collection; for it is not pretended, he charged, or was allowed a *del credere* commission. If the shippers were aware that the debts were outstanding, what injury had they sustained? They were not lulled into a false security, nor were they in any way deceived, and why should they wish to throw the loss on an agent, who, it is acknowledged acted in conformity to his instructions, and with the strictest regard to the interest of his employers. When a principal has reason to suppose that the business is finally closed, and a payment of the balance is made for that purpose, then he should be protected; but I cannot agree, that the mere payment of the balance of the account, without any accompanying circumstance, can have that effect. The case states, that money to the amount of seventeen thousand five hundred dollars, was taken up by *Wilson*, from Messrs. *David Corry and Co.*, with a view of closing the sales at *Port-au-Prince;* but it is no where found, that the balance of the money was paid with the intention of closing the ac-

(Elliott and others, Executors of Field, *v.* Walker and another, Administrators of Wilson.)

count between the principal and agent, which is the turning point in *Oakley* v. *Renshaw*. It has been truly said, by the counsel for the plaintiffs in error, that if an agent sell on credit, it is his duty, within a reasonable time, to inform his principal of the names of the purchasers, and the terms of sale. In such a case the agent would be answerable to his principal, in damages for any loss which may have been sustained by reason of his omission to give the necessary information. It does not, however, follow, that for this neglect, he shall at all events be made responsible for the solvency of the purchasers. The cases relied upon were *Edgar* v. *Bumstead*, 1 *Campb.* 411. *Bousfield* v. *Creswell*, 2 *Campb.* 545. *Simpson* v. *Swan*, 3 *Campb.* 291, and *Wilkinson, Assignee of Gwynne*, v. *Clay*, 4 *Campb.* 170, are cases of insurance brokers, who enter into bonds, and by statute are bound to make known, upon every contract or bargain, the names of their principals. 1 *Liv. on Agency*, 73. They depend upon the well known course of dealing between the insurance broker, the merchant, and underwriter, and do not touch on the common course of trade, or agencies which have no such usages.

There is no doubt an obligation on the principal, (which the civilians call *obligatio mandato contraria*,) to repay his agent such sums of money, as the latter has necessarily expended in the execution of his commission; and to indemnify him for losses sustained by reason of his employment. To give rise to this obligation, it is necessary that the agent should have sustained some loss, on account of the agency, *ex causa mandati*, and that the loss should not have been caused by the agent's fault. These principles are recognized to the fullest extent in *D'Arcey* v. *Lyle*, 5 *Binn.* 441. The statement of the case clearly shows that the loss has been sustained on account of the agency, without any blame imputable to the agent, but from one of those accidents which the utmost vigilance of the plaintiff could not have prevented.

Judgment affirmed.