## WALTER DENNEY & CO. v, WM. D. WHEELWRIGHT & CO.

1. CONTRACT. *Consignment. Sale. Guaranty. Case in judgment.*
   W. & Co., lumber dealers in New York, wrote D. & Co., owners of saw mills in this State, proposing that if the latter would furnish a cargo of lumber for shipment to Rio, they, W. & Co., would procure an advance of $9 per thousand feet of lumber, charter the vessel, etc., and take for their services $1 per thousand, if the lumber netted over $12 per thousand in Rio, or if it did not net over that amount they were to have nothing for their services. In their letter to D. & Co. they said, "the lumber to be shipped for sale on your account." D. & Co. accepted the proposition, a vessel was chartered, and the lumber shipped to S. in Rio, who made the advance of $9 per thousand feet on the cargo; which advances were received by W. & Co. and paid over to D. & Co. The cargo, when sold, failed to produce the amount of the advances, and W. & Co., having been compelled to make good the balance to S., sued D. & Co. for the amount thus refunded to S. D. & Co. defended on the ground that the shipment to S. was upon a sale and not a consignment. *Held,* that this was a consignment by D. & Co. on their account and at their risk, and not a sale to S. nor a guarantee that the lumber would bring at least $9 per thousand.

2. SAME. *Advances on consignment.*
   Advances made on a consignment are to be repaid out of the proceeds of the sale of the goods consigned; or if the proceeds be insufficient, then the consignor must make good the deficiency.

3. PRINCIPAL AND AGENT. *Indemnity.*
   The law implies a contract on the part of the principal to indemnify his agent against all damage which he may sustain arising out of acts rightly done in the prosecution of the business entrusted to him by his principal.

4. SAME. *Notice to principal of suit against agent. Judgment.*
   Where the principal, not being a party to a suit against his agent growing out of business of the principal entrusted to the agent, is duly notified of the pendency of the suit and requested to appear and defend it, and fails to do so he is bound by a judgment recovered thereon against his agent.

5. CONTRACT. *Conditional promise, when absolute. Subsequent insolvency. Instruction.*
   Where in an action upon a contract it appears that the defendant promised to pay when able or when he became able, it is error to instruct the jury that the plaintiff, relying on such promise, must prove, not only that the defendant had become able to pay the debt, but that his ability continued up to the commencement of the suit. When the defendant became able to pay the promise became absolute, and a right of action then existed in favor of the plaintiff, which could not be lost by the subsequent insolvency or inability of the defendant to pay the debt.

6. SET-OFF. *Joint action. Several debts.*
   A set-off is in the nature of a cross-action, and in a joint action by several plaintiffs, their separate debts to the defendant cannot be set-off against their joint demand.

7. SAME. *Joint action.   Separate debts of plaintiffs.*

The several promises of the individual members of a firm to pay a debt cannot, in a joint action by the firm, be set-off by the defendant against the joint demand of the plaintiffs, although each member of the firm might be liable to the defendant in a separate action against him on his particular promise.

APPEAL from the Circuit Court of Jackson County.

Hon. S. H. TERRAL, Judge.

On May 9, 1879, Wm. D. Wheelwright & Co., lumber dealers in New York City, wrote Walter Denney & Co., who are owners of large mills at Moss Point in this State, the following letter: "On terms named to Mr. Gause we have arranged for a shipment of a cargo of all heart pitch pine to Rio for your account, procuring a cash advance of $9 per M. on the bill lading (which advance we will endeavor to increase to $10 and expect to do so), and chartering a vessel at the best rate obtainable, it being understood that for such services we are to receive $1 per M. commissions in case the lumber nets $13 f. o. b., or more. If it nets less than $13 we are to receive anything that it nets over $12, and if it nets $12 or less, we receive nothing. Please write us a line accepting the above. We are assured by two of the best houses here that such a shipment will certainly pay well and lead to more business." Walter Denney & Co. replied accepting the proposition.

After much delay in procuring a suitable vessel — almost a year — the lumber was finally shipped, and the $9 per thousand was paid Denney & Co.,— one Wm. Von Sacks, agent for a Rio house, chartering the vessel and making the advances. The sale in Rio proved disastrous, hardly realizing enough to pay freight. Of this fact Wheelwright & Co. informed Denney & Co., and called on them to refund the money advanced, or enough to make good the deficit. Walter Denney & Co. refused to return the money, claiming that the shipment was a sale to Von Sacks, and not a consignment; that they never made consignments; that they could have gotten more than $9 for the lumber at the mills, and that they con-

sidered the shipment for their account to refer to what the lumber might bring in excess of $9 per thousand in Rio. The proof shows that Denney & Co. delivered the lumber to agents of Von Sacks, and knew nothing more about it until they were called on to refund the advance.   Upon the failure of Denney & Co. to pay back the advance, Von Sacks brought suit in New York against Wheelwright & Co., and obtained a judgment against them for the amount of the advance.   As soon as the suit was instituted in New York, Wheelwright & Co. notified Denney & Co. of its pendency, sending them a copy of the summons and requesting them to come in and defend.   Denney & Co. were not made parties to the suit in New York and did not defend it.   Wheelwright & Co. having satisfied the New York judgment, brought this suit against Denney & Co., setting out the above facts and claiming that they were the agents of Denney & Co. in the transaction, and as such had been damaged to the amount of the judgment and attorney fees and costs.   Denney & Co. pleaded the general issue, and gave notice of a set-off.   The facts bearing on the question of set-off fully appear in the opinion of the court.   The verdict and judgment were for the plaintiff, and the defendants appealed.

*W. P. & J. B. Harris*, for the appellants.

Where the name of the principal is disclosed at the time the contract is made by the agent the former is the proper party to sue upon the contract.   1 Pars. on Con. 63, 64; *Alerick* v. *Ford*, 23 How. 49; 2 Kent's Com. 630, 631, note; *Allen* v. *Merchants' Bank of N. Y.*, 22 Wend. 224; *Green* v. *Cope*, 36 Eng. Law & Eq. 396.   An agent is not personally liable unless he transcends his agency, or departs from its provisions, or unless he expressly pledges his own liability. 1 Pars. on Con. 64, sect. 7.   The payment of the $9 per thousand was a guarantee that the lumber would bring certainly that much.   It was an absolute payment and not an allowance.   The contract is not one which is capable of two constructions.   Whatever might have been the meaning of

Wheelwright & Co., they must stand by the plain and natural interpretation of their written words. The appellee will argue that the words sold " for your account " fix upon Walter Denney & Co. the liability to refund the money. But we submit that the meaning of that was, that they were to account to Denney & Co. for all that the lumber brought over and above the $9 per thousand. Denney & Co. could have gotten more than $9 at their mills, but under influence of the letters of Wheelwright & Co. they were willing to take the $9, with the chance of realizing the fine prices of the Rio market, and it was with reference to this surplus, or excess over the $9 that accounting was to be had. They attempt to force Denney & Co. into the attitude of consignors, when the facts show that they did not bear any of the characteristics of consignors. They had no control of the lumber ; they could not recall it or change its destination. It was not subject to their direction. The truth is the lumber was not sold for their account, but for the account of Von Sacks. Wheelwright & Co. did not comply with their part of the agreement. They were to charter a vessel and consign the lumber to Rio, whereas if there was any consignment it was to Von Sacks, who took the bills of lading, and in his turn consigned the lumber to Rio on his own account. If there was a consignment by Denney & Co. it was a consignment on sale to Von Sacks. It has none of the characteristics of any other kind of consignment. When a party consigns goods with the understanding that he is to have a particular price at a particular time, it is a consignment on sale. See L. R. 6 Ch. App. 397 ; 12 B. R. 230. In the case at bar a minimum price was agreed upon — $9 per thousand — to be paid at a particular time, to wit, on the signing of the bill of lading. It would be rather hard to deprive a man entirely of the control of his property, as is done here, and yet hold him responsible for all loss, and make him bear all the risk. As to the notice of the suit, we most positively dissent from the proposition that it had any binding effect on Denney & Co.

The court will see that in all those cases in which such notice is held to affect the rights of parties not parties to the suit, are cases where the party to whom the notice is given, stood, either by the express terms of the agreement or by the most direct implication of law, in the relation of indemnitors to the parties sued, as covenantors, where suit is brought against the covenantor, or party notified has agreed to indemnify the party sued against damage; or where the relations of the parties are of such unequivocal character that the law will imply the promise to save harmless. In the case at bar neither by the terms of the contract, nor by any circumstance in the case, can such a relation be established between Denney & Co. and Wheelwright & Co. We also submit that it was error to instruct the jury that unless the defendants prove that at the time William D. Wheelwright & Co. instituted this suit, they were better able to pay the debt than when the promise was made, they must fail on their plea of set-off. This cannot be the law. William D. Wheelwright & Co. should have paid the debt at any time when they were in a condition to do so, and their failure to pay when they should pay, certainly should not destroy the force of the promise if, at a subsequent period, when called on to pay, they should be less able to pay. The debt became due and payable whenever they were in a condition to pay, and was completely revived whether this ability to pay was at the time the suit was instituted or prior thereto.

*J. B. Harris*, argued the case orally.

*H. Pillars*, for the appellees.

Wheelwright & Co. were, in all they did, agents acting in good faith in the proper service of defendants, their principals, and were entitled to indemnity for all losses and expenses incurred therein or resulting therefrom. Story on Ag., sects. 335, 339, 340; *Powell* v. *Trustees Newburg*, 19 Johns. 284; *Darcy* v. *Lyle*, 5 Binn. 441, 450; *Child* v. *Morley*, 8 Term Rep. 610 (see 308); *Howe* v. *Buffalo*, etc., *R. R.*, 37 N. Y. 297. And see the notes to *Darcy* v. *Lyle*, 1 Am. Ld. Cas. (1st

ed.) 523, 539 ; 1 Am. Ld. Cas. (5th ed.) 856, 870.   They conformed to the usages, as was their duty, and hence are protected.   1 Pars. on Con. 80, 84 ; 64 Pa. St. 361 ; *Giddings* v. *Sears,* 103 Mass. 311 ; 3 Waite's Act. & Def. 275.   And so, having given notice to their principals (defendants) of the pendency of the suit against them, the plaintiffs were rightfully permitted to introduce the judgment in evidence in this case.  *Pickett's Exrs.* v. *Ford,* 4 How. (Miss.) 246 ; *Cartright* v. *Carpenter,* 7 How. (Miss.) 328, 337 ; *Robinson* v. *Lane,* 14 Smed. & M. 161, 170 ; *Robbins* v. *Chicago,* 4 Wall. 657, 671.   And all proceedings taken in said cause in good faith bound said indemnitors, the defendants here.  *Chamberlain* v. *Preble,* 11 Allen, 370.   It will be observed that the existence of the agency and consignment is not a disputed fact in the evidence, and the only doubt on that head arose in counsel's mind, not in witness's.   The set-off was objectionable for want of mutuality.   It constituted no claim on which a suit could ever have been maintained by defendants against W. D. Wheelwright & Co., the plaintiffs herein, and hence was improperly admitted against plaintiffs' objection.  *Whitehead* v. *Cade,* 1 How. (Miss.) 95 ; *Jones* v. *Howard,* 53 Miss. 707, 713.   And see 28 Miss. 432.   Besides, the evidence of plaintiffs showed their full discharge in bankruptcy from those debts.   The bankruptcy of Moseley, Wheelwright & Co. effected a dissolution of that partnership.  *Halsey* v. *Norton,* 45 Miss. 703.   And the discharge put an end to the individual liability of the partners.   The result of the dissolution was to put an end to the power of either partner, by admissions or new promises not specially authorized by the other, to bind his late associate.  *Maxey* v. *Strong,* 53 Miss. 280, 285 ; *Brown* v. *Broach,* 52 Miss. 536.   Hence each could only bind himself by any new promise to pay the discharged debt, and it would then be his individual or separate debt.   There was no evidence that either Wheelwright or Moseley ever proposed to bind the new firm of W. D. Wheelwright & Co. by any promise that they would pay the discharged debts of Moseley, Wheel-

wright & Co., and had either of, them assumed so to bind the
firm such action would clearly have not been within the scope
of the partnership business and not binding on said new firm.
*Cummings* v. *Parish*, 39 Miss. 412 ; Geo. Dig. 352, sects. 25,
to 28.   The letter of W. D. Wheelwright & Co. to W. Denney
& Co. appears, from the evidence, to have been written by
Wheelwright alone, Moseley being in Boston.   So the firm was,
as a firm, never bound.   It may be here remarked that it
seems the better authority is, that it is the new promise which
is enforced, not the old one treated as revived, as is the case
where the bar is of the remedy merely as in limitation cases.
*Kelly* v. *Pike*, 5 Cush. 484 ; *Graham* v. *Hunt*, 8 B. Mon. 7 ;
*Waite* v. *Morris*, 6 Wend. 394, 396 ; *Prewitt* v. *Caruthers*, 12
Smed. & M. 491, 495 ; *McWillie* v. *Kirkpatrick*, 28 Miss. 802,
809.   And such is the law in this State — " the promise must
be express and distinct." *McWillie* v. *Kirkpatrick*, 28 Miss.
802, 809 ; *Prewitt* v. *Caruthers*, 12 Smed. & M. 491, 495.

*H. Pillars*, also made an oral argument.

COOPER, J., delivered the opinion of the court.

Aside from the questions arising on the set-off of the de-
fendants, the only real controversy is as to whether the lum-
ber shipped to Rio was a consignment by the defendants for
sale for their account and at their risk, or was sold by them
to Von Sacks, or was consigned on a guarantee by Von Sacks
that it should in any event net the defendants not less than a
certain price.   These were questions of fact for the jury, and,
from a careful examination of all the evidence, we fail to dis-
cover anything from which it could have inferred any other
fact than that the shipment was an ordinary consignment of
goods for sale on which the consignee advanced a certain sum.
In such cases there can be no doubt that the advances are to
be repaid out of the proceeds of the sale of the goods con-
signed, and if they are insufficient then the consignor must
make good the deficiency.

There is nothing whatever to indicate an intention or con-
tract on the part of Wheelwright & Co. or of Von Sacks, to

guarantee any net sum whatever on the price at which the lumber should be sold.   If Denney & Co. so construed the contract it was their own fault, and such misconstruction cannot give them a right to retain the money advanced and leave the loss to fall on the consignee or on their own agent.

It being settled that the consignment was for and on account of Denney & Co., and that Wheelwright & Co. were acting in the matter as their agents, the law implied a contract on the part of the principal to indemnify the agent against all damages which he sustained arising out of acts rightly done in the prosecution of the business of the principal.   Whart. on Ag., sect. 315 ; *Stocking* v. *Love*, 1 Conn. 579 ; *Eliott* v. *Walker*, 1 Rawle, 126 ; *Darcy* v. *Lyle*, 5 Binn. 441 (1 Am. Ld. Cas. 856).

The defendants were duly notified of the pendency of the suit by Von Sacks, the consignee, against the plaintiffs, and requested to appear and defend the same.   This they failed to do, and although they were not parties to the proceedings, they might have interposed therein and defended the suit.   Having failed so to do, they are bound by the judgment.   1 Greenl. on Ev., sect. 523 ; *Pickett's Exrs.* v. *Ford*, 4 How..(Miss.) 246 ; *Cartwright* v. *Carpenter*, 7 How. (Miss.) 328 ; *Robinson* v. *Lane*, 14 Smed. & M. 161.

The plaintiffs were entitled to the recovery obtained unless the set-off claimed by the defendants ought to have been allowed.   The set-off arose out of the following facts : Wheelwright & Co., in the year 1877, were engaged in business under the firm name of Moseley, Wheelwright & Co., and in such business became indebted to the defendants as acceptors on two bills of exchange drawn by one Gause, one of said bills being for the amount of $2,994.11, and the other for $1,431.19.   In the year 1878 the defendants filed their petition in the District Court of the United States for the District of Massachusetts, sitting in bankruptcy, praying that they might be adjudicated bankrupts, and discharged from the obligation of their debts, and on the first day of April, A. D. 1879, a certificate was granted to them by said court dis-

charging them from their debts which were in existence on the 23d day of February, 1878. To the plea of payment and set-off the plaintiffs replied their discharge in bankruptcy, and to this defendants rejoined by the allegation of new and subsequent promises by the plaintiffs to pay the debts due by them.

The evidence in support of the new promises was conflicting; but for the purpose of testing the correctness of the instructions given for the plaintiffs, we must be guided by that introduced by the defendants, as it was upon the theory that the facts existed which such evidence tended to prove, that the instructions were given.

As to the new promise made by the plaintiff Wheelwright, the defendant Denny, testifying, says: "Sometime after their bankruptcy, on the 4th or 5th of February, 1880 (the night before we entered into the arrangement in writing whereby we were to sell him all Boston flooring manufactured by us during the year at $15 per thousand, and therefor he was to pay us an additional dollar per thousand upon the barred debt), Mr. Wheelwright remained all night at my house in Moss Point. He was anxious to get me to sell lumber to him again. I told him I wanted an understanding first as to the old debt. He said he intended to pay it all, and hoped to pay it all. After further conversation he said he intended to and would pay it all, as soon as he was able." The contract for the sale of the Boston flooring referred to by this witness is as follows: —

"SCRANTON, MISS., February 5, 1880.

"*Messrs. W. Denny & Co.*

"DEAR SIRS: We hereby agree to pay you $1 per M. on all lumber shipped to us from your mill under contract of this date, to apply on the debt of our estate to you until the said debt is paid, said extra dollar per M. to be paid at the time of clearance of each vessel. Yours very truly,

"MOSELEY, WHEELWRIGHT & Co."

The other verbal promise to pay this debt was made by

Moseley, and this, too, is proved by the witness Denny, who says: "I asked Moseley when he agreed to pay $20 per thousand [the witness is speaking of a conversation in which the contract to sell to the plaintiffs all the Boston flooring manufactured by them during the year 1880 at $15 per thousand, was changed to a contract to sell the same character of flooring at $20], will you pay an additional dollar per thousand to go on the old debt?" He replied: "I have a new partner now, and cannot so promise, but I will pay the old debt, and I hope and intend to pay every dollar of it before the expiration of the coming year."

In addition to these verbal promises to pay the debt, the defendants relied on certain letters written by the firm of Wheelwright & Co. to their own. We extract from these. In letter written on the 14th of July, in reference to the proposed shipment to Rio, and speaking of the commissions which might be thereby earned by their firm, the plaintiffs say: "Whatever we make on this, we will pay over on account of the debt of our old firm." In a letter of date of October 4, 1879, the plaintiffs, writing about the trade in which they were engaged, and the fact that it was not remunerative, said: "If we could make a fair thing of it, we could pay off the old debt in a reasonable time. As it is, the utmost we can do is $500, towards which we both contribute (here and in Boston, though here we have done nothing with you as yet), and not having the money at present, we can only agree to accept a sixty-day draft for that amount, which we will pay at maturity. We wish we could do more, and assure you that we will, as soon as the business justifies it." In a letter dated September 6, 1880, the plaintiffs, writing in relation to the settlement of the controvery arising from the shipment of the lumber to Rio, said: "As we have said from the beginning, we will do anything in our power to forward it. Mr. Von Sacks will take part of the settlement in Rio deals, and we will try and keep the matter out by paying you something on our old debt."

As to the new promises, the propositions of the defendant in the court below, were : First, that there was an unconditional promise, jointly and severally made by the plaintiffs ; and, second, that if the promises were conditional, then the evidence showed that the condition had happened and that the promises had become absolute. On the part of the plaintiffs, it was contended that the evidence did not disclose any joint promise by them, and that if any promise at all was made, it was conditional, and the condition was not proved to have occurred.

On the application of the plaintiffs the court instructed the jury as follows : "Even if the jury should find from the evidence that both plaintiffs had made express and distinct promises to pay the old debts, yet if either or both of such plaintiffs made such promises upon any condition, it devolves upon the defendants who set up the new promises to prove to the satisfaction of the jury that the condition has happened upon which they agreed to pay, and so if they promised to pay when they became more prosperous, or better able, the jury cannot regard the set-off as proved unless the plaintiffs are shown to have been at the *commencement of this suit* more prosperous or better able to pay said old debt than when such promise was made."

For the defendants the court instructed the jury that, "If they believe from the evidence before them, that these plaintiffs jointly and severally, by writing or verbally, since their discharge in bankruptcy, promised to pay two drafts filed as offsets to this suit, or that they jointly or severally promised, either verbally or in writing, to pay the same as soon as they were able to pay said notes, and that if they further believe from the evidence before them that both of these plaintiffs, since making said promises, have been able to pay the same from their business, then the jury will allow both of said notes or protested bills of exchange and all interest, less the several sums of money that have been paid on the same."

Neither instruction correctly announced the law.

The fault of that given for the plaintiffs is that it required the defendants to prove not only that the condition had happened upon which the promises of the plaintiffs became absolute, but that it continued up to the commencement of the suit. If the promise of the plaintiffs was to pay these notes when or if they became able, then when they became able the promise became absolute, and a right of action existed in favor of the defendants which would not be lost by the subsequent insolvency or inability of the plaintiffs to pay the debt. The question was not whether the plaintiffs were at the institution of their suit able to pay the debts, but whether at any time after their promise it became absolute by the happening of the condition.

In the instruction for the defendants this was announced as the law. But the instructions are directly in conflict on this point, and we cannot say which was accepted by the jury as their guide.

The error in that given for the defendants is that by it the jury were instructed that the set-off should be allowed if the plaintiffs, jointly and severally or jointly or severally, promised to pay the old debt.

Ordinarily such an error would result in a reversal of the judgment, but a careful examination of the record has failed to disclose any evidence sufficient to have authorized the jury to allow the set-off. There appears to have been an unequivocal, absolute promise on the part of Moseley as an individual, and a conditional promise on the part of Wheelwright, which promise became absolute by the happening of the condition on which he agreed to pay, but there is nothing to show that the plaintiffs *jointly* ever promised, absolutely or conditionally, to pay the debt evidenced by the notes (or bills of exchange) filed as a set-off. They agreed to pay $1 per thousand extra on all Boston flooring sold to them in the year 1880 under their contract of February 5, 1880; but the evidence shows that they complied with this contract according to its terms, and beyond this they were not bound. By

their letter of October 4, 1879 (if it be admitted that it was the letter of the firm and not of the member by whom it was written), they agreed to pay $500, and agreed "to do more as soon as the business justifies it." How much more they proposed to pay is not shown; but it is shown that the $500 was paid, and afterwards the firm did "do more" by paying $301.02 September 4, 1880; $217.32 May 19, 1880; $259.70 June 15, 1880; $289.99 July 6, 1880; $280.93 October 18, 1880, and $320.53 December 9, 1880. So in their letter of July 14, 1879, they agreed to pay on the old debt whatever commissions might accrue to them by reason of the contemplated shipment to Rio; but it is shown that they had no commissions arising from this shipment. By their letter of September 6, 1880, they agreed, if the defendants would repay to Von Sacks the amount advanced by him on the shipment to Rio, they would aid in its settlement by "paying something on the old debt;" but the defendants did not accept this offer, and the plaintiffs were therefore not bound by it.

We are of opinion that there was never any agreement absolute or conditional by which the plaintiffs were jointly bound for the payment of the debt attempted to be set-off, and though the defendants might under the several agreements of the individuals composing the firm have brought separate suits against each, they could not have sued both jointly; and because a set-off is only a cross-action, the several debts of the plaintiffs cannot be set-off in an action brought by them jointly.

The judgment is therefore affirmed.